IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CHARLES JACKSON,**

    **Plaintiff,**

v.                                           CIV 03-0269 MCA/LAM

**STEVE GARNER, Assistant Warden,
et al.,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on Defendants' *Motion for Summary Judgment* (*Doc. 34*), filed on August 6, 2004. Following extension of the briefing deadlines for dispositive motions and issuance of an *Order to Show Cause* (*Doc. 40*), Plaintiff filed his *Response in Opposition to Defendants' Motion for Summary Judgment* (*Doc. 46*) on January 3, 2005. Defendants filed *Defendants' Reply in Support of Motion for Summary Judgment* (*Doc. 49*) to the response on January 18, 2005. Additionally, pursuant to the Court's orders (*Docs. 25, 29*) filed on March 16, 2004 and May 27, 2004, respectively, Defendants filed a *Martinez Report* (*Doc. 30*)

---

[1] Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition with the Clerk of the United States District Court for the District of New Mexico, 333 Lomas Boulevard, N.W., Albuquerque, New Mexico 87102. **A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

(hereinafter, "*Martinez Report*") on June 22, 2004.² Plaintiff filed objections (*Doc. 32*) to the *Martinez Report* on July 29, 2004, and Defendants filed a reply to the objections (*Doc. 33*) on August 6, 2004. On December 14, 2004, Defendants filed additional documents (*Docs. 43, 44*), supplementing the *Martinez Report*. In deciding this matter, the Court has considered all of the pleadings on file in this matter, including Plaintiff's original *Complaint* (*Doc.1*) and his supplements to the complaint (*Docs. 17, 18*), the *Martinez Report* (*Doc. 30*) and Defendants' supplements to the *Martinez Report* (*Docs. 43, 44*), Plaintiff's objections to the *Martinez Report* (*Doc. 32*), Defendants' reply to the objections (*Doc. 33*), Defendants' motion for summary judgment (*Doc.34*) and the related response and reply (*Docs. 46 and 49*), all attachments thereto, and relevant law.³

Defendants have requested summary dismissal based on their motion for summary judgment and the *Martinez Report*. In the Court's orders directing submission of the *Martinez Report* (*Docs. 25, 29*), the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. Additionally, Plaintiff, who is proceeding *pro se*, was afforded an opportunity to respond

---

²The *Martinez Report* was required, in part, to obtain evidence of whether Plaintiff had exhausted his administrative remedies through the prison grievance procedure. *See **Proposed Findings and Recommended Disposition & Orders, Including Order to File a Martinez Report*** (*Doc. 25*) at 2.

³On March 4, 2005, Plaintiff filed a document entitled "***Leave of the Court to Supplement***" (*Doc. 51*) seeking leave of the Court to supplement his response to Defendants' motion for summary judgment. In response, Defendants filed a ***Motion to Strike Plaintiff's March 4, 2005 Supplement*** (*Doc. 52*), seeking to strike the supplement on the grounds that it is untimely filed without excuse, redundant and immaterial. On March 28, 2005, Plaintiff filed a response (*Doc. 53*) to the motion to strike asking the Court to take judicial notice of certain facts. The Court has filed an order concurrently with these proposed findings and recommended disposition granting Defendants' motion to strike. Accordingly, *Document 51* and its attachments, as well as the documents attached to *Document 53*, will not be included in the Court's consideration of Defendants' motion for summary judgment.

to the *Martinez Report* and present conflicting evidence to controvert the facts set forth in the *Martinez Report*.[4]

Defendants' motion for summary judgment is ready for ruling. Defendants' motion seeks summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies with respect to all of his claims; (2) there is no dispute of material fact with respect to Plaintiff's claims; and (3) as to several of his claims, Plaintiff has not alleged constitutional violations. For the reasons set forth below, the Court recommends that Defendants' *Motion for Summary Judgment* (*Doc. 34*) be **GRANTED**, for Plaintiff's failure to exhaust administrative remedies with respect to all of his claims, and that Plaintiff's complaint, as supplemented, be **DISMISSED WITHOUT PREJUDICE**.

## Background

Plaintiff, who is a prisoner, seeks relief pursuant to 42 U.S.C. § 1983. *Complaint* (*Doc. 1*) *at 2*. During the time period relevant to his claims, Plaintiff was incarcerated at the Torrance County Detention Facility (hereinafter, "TCDF") which is operated by Corrections Corporation of America (hereinafter, "CCA"). *Defendants' Motion for Summary Judgment* (*Doc. 34*) *at 1*. Defendant Garner worked at TCDF as an Assistant Warden from September 17, 1999, until January 27 or 28, 2001. *Martinez Report, Exhibit BB at 1*. Defendant Benavidez has worked for CCA since 1999, and during the time at issue, in late 2000 to early 2001, he worked as a lieutenant at TCDF. *Martinez Report, Exhibit CC at 1*.

---

[4]*See **Proposed Findings and Recommended Disposition and Orders, Including Order to File a Martinez Report** (*Doc. 25*) at 2-5.*

Plaintiff's claims, as construed by the Court, are as follows:

1. On or about December 1, 2000, Defendant Garner, acting with knowledge that Plaintiff's life had been threatened, forced Plaintiff into the general prison population from protective custody against his will which resulted in his assault by another inmate and physical injury in violation of his Fifth and Eighth Amendment rights. *Complaint* (*Doc. 1*) *at 2-3; Doc. 18 at 2*.

2. On January 15, 2001, Defendant Benavidez hit Plaintiff on the head without provocation and denied him medical treatment in violation of his Fifth, Eighth and Fourteenth Amendment rights. *Complaint* (*Doc. 1*) *at 2-3; Doc. 18 at 2-3*.

3. On an unspecified date, unspecified TCDF staff stole photographs of Plaintiff's injuries from his in-coming legal mail from his attorney in violation of his federal constitutional rights. *Complaint* (*Doc. 1*) *at 2*.

4. Defendant Garner fabricated unwarranted, damaging and malicious allegations about Plaintiff and also taunted, harassed and intimidated Plaintiff while he was in protective custody on a routine basis in violation of his federal constitutional rights. *Complaint* (*Doc. 1*) *at 2*.

5. On March 26, 2001, Plaintiff's access to the TCDF grievance procedure was wrongfully restricted in violation of his federal constitutional rights. *Complaint* (*Doc. 1*) *at 2*.

As relief, Plaintiff seeks monetary damages in the amount of $1,000,000.00. *Complaint* (*Doc. 1*) *at 6; Doc. 18 at 3*.

### **Legal Standards**

A motion for summary judgment may only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" *Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). A fact is material if, under governing law, it could affect the outcome of the lawsuit. *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Having filed a motion for summary judgment, Defendants have the initial burden of showing that there is an absence of evidence to support Plaintiff's claims. *Munoz v. St. Mary-Corwin Hospital*, 221 F.3d at 1164. Once Defendants meet this burden, it falls to Plaintiff to identify specific facts showing the existence of a genuine issue of material fact for trial. *Id.*

Under 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995, a prison inmate is required to exhaust prison administrative remedies before suing over prison conditions, regardless of whether the prisoner is suing for injunctive relief or money damages. *Booth v. Churner, et al.*, 532 U.S. 731, 741 (2001).[5] Even where available administrative remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Id.* at 741, n. 6. This exhaustion requirement applies to all inmate suits about prison life and is designed to: (1) allow prison officials an opportunity to resolve the inmate's complaint; (2) filter out some frivolous claims; and (3) create an administrative record to facilitate the review of cases eventually brought to court. *Porter v. Nussle*, 534 U.S. 516, 525-532 (2002). In a prisoner's civil rights complaint, the prisoner must describe his efforts to exhaust prison administrative remedies.

---

[5]The relevant provision is 42 U.S.C. 1997e(a) which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

5

*Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003), *cert. denied*, 125 S.Ct. 344 (2004). "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under [42 U.S.C.] § 1997e." *Id. at* 1211 (quoting *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000)). To ensure compliance with 42 U.S.C. § 1997e, "a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." *Steele*, 355 F.3d at 1211. In the Tenth Circuit, the exhaustion requirement in 42 U.S.C. § 1997e(a) is one of "total exhaustion," meaning that the presence of any unexhausted claims in a prisoner's complaint under 42 U.S.C. § 1983 ordinarily requires a court to dismiss the prisoner's entire lawsuit without prejudice. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-1190 (10th Cir. 2004).[6]

## **Analysis**

In their motion for summary judgment, Defendants contend that Plaintiff failed to exhaust his prison administrative remedies with respect to all of his claims. Defendants assert that Plaintiff only exhausted his administrative remedies with respect to his claim that CCA staff stole photographs from his legal mail and that he did not exhaust his administrative remedies with respect to his other claims. Because Plaintiff failed to exhaust his administrative remedies with respect to all of his claims, Defendants contend that all of his claims should be dismissed without prejudice pursuant to 42 U.S.C.

---

[6]As the Tenth Circuit noted in *Ross v. County of Bernalillo*, there is an exception to the exhaustion requirement in 42 U.S.C. § 1997e(c)(2) for any claim that "is, on its face, frivolous, malicious, fails to state claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." These claims may be dismissed without first requiring the exhaustion of administrative remedies. *Ross v. County of Bernalillo*, 365 F.3d at 1190.

§ 1997e(a) and the "total exhaustion" requirement expressed in *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-1190 (10th Cir. 2004).

In his pleadings, Plaintiff alleges that he exhausted his administrative remedies with respect to his claims. *Complaint* (*Doc. 1*) *at 5.* In support of this allegation, Plaintiff asserts that he filed a grievance on January 18, 2001, that was received on March 16, 2001, and that he was later put on "grievance restriction" on March 26, 2001. *Id.* As proof of exhaustion, Plaintiff has attached to his complaint copies of a Grievance Form for Grievance No. 01-03-66,[7] submitted on March 15, 2002, regarding his claim that he was assaulted and denied medical treatment by Defendant Benavidez, and also a Memorandum dated March 26, 2001, from Warden Don Stewart to Plaintiff, placing Plaintiff on grievance restriction at TCDF effective March 21, 2001. *Complaint* (*Doc. 1*), *unnumbered attachments.*

In their motion for summary judgment and the *Martinez Report*, Defendants submitted the TCDF grievance procedure,[8] Plaintiff's complete grievance file from TCDF for the period from October 2, 2000 through March 20, 2001,[9] and affidavits with supporting documentation. These materials submitted by Defendants, and the other materials considered by the Court in deciding this matter, demonstrate that there is no genuine issue of material fact with regard to whether Plaintiff exhausted his administrative remedies with respect to all of his claims. The undisputed facts,

---

[7]A more legible copy of this document is attached to *Document 18* filed by Plaintiff on July 21, 2003.

[8]*Martinez Report, Exhibit Z.*

[9]Plaintiff's complete grievance file for this period is attached to the *Martinez Report* as *Exhibit X*. *See Martinez Report at 5, n.3.* It is undisputed that Plaintiff filed no grievances with TCDF during the period from March 21, 2001 through May, 2001. *See Martinez Report, Exhibit EE.*

7

discussed below, show that Plaintiff exhausted his administrative remedies with respect to his claims that Defendant Benavidez assaulted Plaintiff and denied him medical treatment on January 15, 2001, and that TCDF staff stole photographs from Plaintiff's in-coming legal mail. However, the undisputed facts show that Plaintiff failed to exhaust his administrative remedies with respect to his claims that Defendant Garner forced Plaintiff into the general prison population against his will on or about December 1, 2000, that Defendant Garner fabricated allegations about Plaintiff or taunted, harassed or intimidated Plaintiff on a routine basis, and that Plaintiff was wrongfully placed on grievance restriction on March 26, 2001.

### *TCDF Grievance Procedure*

The TCDF grievance procedure defines grievable matters and establishes a formal grievance procedure for inmates to use to file complaints about "facility conditions, treatment, policies, and procedures." ***Martinez Report***, *Exhibit Z, at 1-2*. Assuming a matter is grievable,[10] there are three steps in the formal grievance procedure: (1) filing the grievance on an Inmate/Resident Grievance Form and either placing it the Grievance Mailbox or forwarding it to the Facility Grievance Officer; (2) issuance of a written decision on the grievance by the Facility Grievance Officer, following his investigation; and (3) if the inmate is not satisfied with the decision of the Facility Grievance Officer, filing an appeal to the Warden/Administrator by completing a special section of the Grievance Form and submitting the completed form to the Warden/Administrator. ***Martinez Report***, *Exhibit Z at 4-5*. The grievance procedure sets time limits for filing grievances (generally within seven days of the

---

[10]Under the TCDF grievance procedure, non-grievable matters are: (1) state and federal court decisions; (2) state and federal laws and regulations; (3) final decisions on grievances; and (4) contracting agency policies, procedures, decisions or matters. ***Martinez Report***, *Exhibit Z at 2*.

alleged incident) and provides that only one grievance may be filed in connection with a single incident or item of concern. ***Martinez Report****, Exhibit Z at 3.*

### *Alleged Removal of Plaintiff from Protective Custody Against His Will*

On November 26, 2000, Plaintiff was placed in involuntary, administrative segregation for his own safety based on information that his life was in danger. ***Martinez Report****, Exhibits H and J.*[11] On November 30, 2000, Plaintiff submitted a Waiver of Protective Custody Status form, waiving his protective custody status and stating that, "no one in the units [sic] is out to hurt me . . . ." ***Martinez Report****, Exhibit I.* On the same date, Plaintiff was reclassified and released into the general prison population. ***Martinez Report****, Exhibits J, AA and Y.* On December 1, 2000, Plaintiff was injured. Plaintiff initially claimed that he was injured when he slipped, but later he claimed that he was injured by another inmate who stabbed him. ***Martinez Report****, Exhibits N, O, U, V, X (Grievance Forms 00-12-57 and 01-01-02).* The record of Plaintiff's grievances filed at TCDF from October 2, 2000 through March 20, 2001, shows that Plaintiff filed eight grievances mentioning his injury on December 1, 2000. ***Martinez Report****, Exhibit X (Grievance Forms 00-12-57, 00-12-36, 01-01-02, 01-01-189, 01-02-87, 01-02-122, 01-02-136, 01-03-62.* However, none of these grievances, and no other grievance forms in the record, contain allegations that Plaintiff was forced into the general prison population against his will by Defendant Garner on or about December 1, 2000, with knowledge that Plaintiff's life had been threatened, as he alleges in his complaint. *See **Complaint** (Doc. 1) at 2 (both), 3.* Based on the absence of evidence that Plaintiff filed a grievance with respect

---

[11]Plaintiff had previously been placed in protective custody on September 28, 2000, at his request, following a death in his family and the receipt by TCDF administration of a note indicating that Plaintiff might be in danger in the general prison population. *Memorandum dated October 6, 2000, attached to Document 18* (one of Plaintiff's supplements to his Complaint).

to this claim, the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to this claim.

### *Alleged Assault and Denial of Medical Treatment by Defendant Benavidez*

On March 15, 2001, Plaintiff filed a grievance alleging that Defendant Benavidez assaulted him and denied him medical treatment on January 15, 2001.[12] *Martinez Report, Exhibit X (Grievance Form 01-03-66).*[13] On March 19, 2001, the Grievance Officer decided that this grievance was resolved and that all answers were provided in prior grievances.[14] *Id.* Plaintiff appealed this grievance and on April 2, 2001, the Warden/Administrator denied the appeal. *Id.* Because Plaintiff filed a grievance and exhausted all steps in the grievance procedure with respect to this claim, the Court concludes that Plaintiff exhausted his administrative remedies with respect to this claim.

### *Alleged Theft of Photographs from Legal Mail*

On February 13, 2001, Plaintiff filed a grievance regarding the alleged theft of photographs by TCDF staff from Plaintiff's in-coming mail from his attorney. *Martinez Report, Exhibit X (Grievance Form 01-02-72).* On February 20, 2001, the Grievance Officer concluded that there were no pictures in the envelope. *Id.* Plaintiff appealed and on March 13, 2001, the Warden/Administrator decided that there was no evidence that any photos were removed from Plaintiff's legal mail. *Id.* On

---

[12] In this grievance, Plaintiff states that on January 18, 2001, he wrote another grievance form about this alleged incident with Defendant Benavidez; however, there is no other evidence in the record of this other grievance form. *Martinez Report, Exhibit X (Grievance Form 01-03-66).*

[13] Another grievance mentions the alleged January 15, 2001, incident in passing. *Martinez Report, Exhibit X (Grievance Form 01-03-102).*

[14] In Grievance Form 01-03-66, the Grievance Officer referred to Grievance Form 01-01-138, previously submitted by Plaintiff concerning Defendant Benavidez but this previous grievance concerned an incident on January 10, 2001, and did not allege any assault or denial of medical treatment by Benavidez. *Martinez Report, Exhibit X.*

February 13, 2001, Plaintiff filed a second grievance regarding the alleged theft of the photographs. *Martinez Report*, Exhibit X (Grievance Form 01-02-73). On February 20, 2001, the Grievance Officer decided that no mail was opened out of Plaintiff's presence. *Id.* Plaintiff appealed and on February 28, 2001, the Warden/Administrator denied this grievance on the ground that it duplicated Grievance 01-02-72. *Id.* On February 26, 2001, Plaintiff filed a third grievance regarding the alleged theft of the photographs. *Martinez Report*, Exhibit X (Grievance Form 01-02-128). On March 5, 2001, the Grievance Officer denied the grievance. *Id.* Plaintiff appealed and on March 15, 2001, the Warden/Administrator concluded that this was a repeat grievance and it was denied. *Id.* On February 26, 2001, Plaintiff filed a fourth grievance regarding the alleged theft of the photographs. *Martinez Report*, Exhibit X (Grievance Form 01-02-129). On March 5, 2001, the Grievance Officer denied the grievance. Plaintiff appealed and on March 13, 2001, the Warden/Administrator concluded that no photos were removed by any TCDF staff. *Id.* Because Plaintiff filed multiple grievances and exhausted all steps in the grievance procedure with respect to this claim, the Court concludes that Plaintiff exhausted his administrative remedies with respect to this claim.

### Alleged Fabricated Allegations, Taunting, Harassment and Intimidation

There are no grievance forms in the record alleging that Defendant Garner fabricated allegations about Plaintiff or that he taunted, harassed or intimidated Plaintiff on a routine basis. Based on the absence of evidence that Plaintiff filed a grievance with respect to this claim, the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to this claim.

### *Plaintiff's Grievance Restriction*

On March 26, 2001, TCDF Warden Don Stewart placed Plaintiff on grievance restriction, effective March 21, 2001, meaning that Plaintiff could only have three active grievances pending at any one time. *Memorandum dated March 26, 2001, unnumbered attachment to **Complaint** (Doc. 1)*. This restriction excluded emergency grievances, which it defined as "a grievance, the resolution of which, if subjected to normal time limits would subject the grievant to a substantial risk of personal injury or irreparable harm." *Id.* The stated reason for Plaintiff being placed on grievance restriction was his having submitted "an excessive number of grievances that are repetitive or not in accordance with policy" during the period from January 1, 2001 to March 26, 2001. *Id.* There are no grievance forms in the record alleging that Plaintiff was wrongfully placed on grievance restriction. Based on the absence of evidence that Plaintiff filed a grievance with respect to this claim, the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to this claim.

### *Conclusion*

There are no genuine issues of material fact with respect to Plaintiff's exhaustion of administrative remedies. Plaintiff failed to exhaust TCDF's administrative remedies with respect to all of his claims and his complaint is a "mixed" complaint, containing both exhausted and unexhausted claims. Accordingly, under 42 U.S.C. § 1997e(a) and the "total exhaustion" requirement expressed in *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-1190 (10th Cir. 2004), Defendants' motion for summary judgment should be granted on the issue of exhaustion of administrative remedies and Plaintiff's complaint, as supplemented, should be dismissed without prejudice. Because the Court concludes that all of Plaintiff's claims should be dismissed without prejudice for failure to exhaust

administrative remedies, the Court expresses no opinion on the merits of the other arguments asserted in Defendants' motion for summary judgment.

As an alternative to total dismissal of all of Plaintiff's claims at this time, Plaintiff may, **but is not required to**, dismiss all of his unexhausted claims as described herein, and have the Court proceed to the merits of the remaining exhausted claims. *See West v. Kolar*, No. 03-6265, 2004 WL 1834634, at *2, (10th Cir. Aug. 17, 2004) (unpublished); *Lee v. Larkin*, No. 02-3428, 2005 WL 41652, at *3 (D. Kan. Jan. 7, 2005) (unpublished).

### RECOMMENDED DISPOSITION

The Court recommends that Defendants' *Motion for Summary Judgment* (*Doc. 34*) be **GRANTED**, for Plaintiff's failure to exhaust administrative remedies with respect to all of his claims, and that Plaintiff's complaint, as supplemented, be **DISMISSED WITHOUT PREJUDICE unless Plaintiff voluntarily dismisses all of his unexhausted claims as described herein** *no later than ten (10) days after adoption of these proposed findings and recommended disposition by the Presiding Judge herein following expiration of the deadline for filing objections described in footnote 1, above.*

_____
**UNITED STATES MAGISTRATE JUDGE**