IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CHARLES JACKSON,**

    **Plaintiff,**

v.                                                                                   CIV 03-0269 MCA/LAM

**STEVE GARNER, Assistant Warden,
et al.,**

    **Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**PROPOSED FINDINGS**

**THIS MATTER** is before the Court on Defendants' *Motion for Summary Judgment* (*Doc. 34*), filed on August 6, 2004. Following an extension of the briefing deadlines for dispositive motions and issuance of an *Order to Show Cause* (*Doc. 40*), Plaintiff filed his *Response in Opposition to Defendants' Motion for Summary Judgment* (*Doc. 46*) on January 3, 2005. Defendants filed their *Defendants' Reply in Support of Motion for Summary Judgment* (*Doc. 49*) on January 18, 2005. Additionally, pursuant to the Court's orders (*Docs. 25, 29*) filed on March 16, 2004 and May 27, 2004, respectively, Defendants filed a *Martinez Report* (*Doc. 30*)

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition with the Clerk of the United States District Court for the District of New Mexico, 333 Lomas Boulevard, N.W., Albuquerque, New Mexico 87102. **A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

(hereinafter, "*Martinez Report*") on June 22, 2004.[2]  Plaintiff filed objections (*Doc. 32*) to the *Martinez Report* on July 29, 2004, and Defendants filed a reply to the objections (*Doc. 33*) on August 6, 2004.  On December 14, 2004, Defendants filed additional documents (*Docs. 43, 44*), supplementing the *Martinez Report*.  In deciding this matter, the Court has considered all of the pleadings on file in this matter, including Plaintiff's original *Complaint* (*Doc.1*) and his supplements to the complaint (*Docs. 17, 18*), the *Martinez Report* (*Doc. 30*) and Defendants' supplements to the *Martinez Report* (*Docs. 43, 44*), Plaintiff's objections to the *Martinez Report* (*Doc. 32*), Defendants' reply to the objections (*Doc. 33*), Defendants' motion for summary judgment (*Doc.34*) and the related response and reply (*Docs. 46 and 49*), all attachments thereto, and relevant law.[3]

Defendants have requested summary dismissal based on their motion for summary judgment and the *Martinez Report*.  In the Court's orders directing submission of the *Martinez Report* (*Docs. 25, 29*), the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment.  Additionally, Plaintiff, who is proceeding *pro se*, was afforded an opportunity to respond

---

[2]The *Martinez Report* was required, in part, to obtain evidence of whether Plaintiff had exhausted his administrative remedies through the prison grievance procedure. *See Proposed Findings and Recommended Disposition & Orders, Including Order to File a Martinez Report* (*Doc. 25*) at 2.

[3]On March 4, 2005, Plaintiff filed a document entitled "*Leave of the Court to Supplement*" (*Doc. 51*) seeking leave of the Court to supplement his response to Defendants' motion for summary judgment.  In response, Defendants filed *Defendants' Motion to Strike Plaintiff's March 4, 2005 Supplement* (*Doc. 52*), seeking to strike the supplement on the grounds that it was untimely filed without excuse, redundant and immaterial.  On March 28, 2005, Plaintiff filed a response (*Doc. 53*) to the motion to strike asking the Court to take judicial notice of certain facts.  The Court filed an order (*Doc. 54*) on March 31, 2005, granting Defendants' motion to strike.  Accordingly, *Document 51* and its attachments, as well as the documents attached to *Document 53*, have not been included in the Court's consideration of Defendants' motion for summary judgment.

to the *Martinez Report* and present conflicting evidence to controvert the facts set forth in the *Martinez Report*.[4]

Defendants' motion for summary judgment is ready for ruling.  Pursuant to the presiding judge's *Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim* (*Doc. 60*) (*Doc. 61*), filed on June 30, 2005, the sole remaining claim for determination by the Court is Plaintiff's claim that staff at the Torrance County Detention Facility (hereinafter, "TCDF") stole photographs of Plaintiff, depicting him with injuries, from his in-coming legal mail from his attorney in violation of his federal constitutional rights.[5]  Defendants' motion seeks summary judgment on this claim on the grounds that: (1) there is no genuine issue of material fact with respect to this claim; and (2) Defendants are entitled to judgment as a matter of law.  Defendants have conceded that Plaintiff exhausted TCDF's administrative remedies with respect to this claim. *See Defendants' Motion for Summary Judgment* (*Doc. 34*) *at 14 n.5*.  For the reasons set forth below, the Court recommends that Defendants' *Motion for Summary Judgment* (*Doc. 34*) be **GRANTED**, as to Plaintiff's claim that TCDF staff stole photographs from his in-coming legal mail, and that this claim and this case be **DISMISSED WITH PREJUDICE**.  As discussed more fully below, the Court also recommends that Plaintiff's request for leave to amend his complaint, contained in his *Response in Opposition to Defendants' Motion for Summary Judgment* (*Doc. 46*), be

---

[4]*See **Proposed Findings and Recommended Disposition & Orders, Including Order to File a Martinez Report** (Doc. 25) at 2-3, 5.*

[5]*See **Complaint** (Doc. 1), at 2 (continuation sheet); **Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim** (**Doc. 60**) (*Doc. 61*) at 2.*

**DENIED**, and that ***Plaintiff's Motion to Reinstate Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His Two (2) Remaaining [sic], Exhausted Claim's [sic]*** (*Doc. 62*) filed on July 12, 2005, be **DENIED**.

## Background

Plaintiff, who is a prisoner, seeks relief pursuant to 42 U.S.C. § 1983. *See* **Complaint** (*Doc. 1*) *at 2*. During the time period relevant to his claim, Plaintiff was incarcerated at TCDF which is operated by Corrections Corporation of America, Inc. (hereinafter, "CCA"). *See* ***Defendants' Motion for Summary Judgment*** (*Doc. 34*) *at 1*. It is undisputed that Defendant Garner worked at TCDF as an Assistant Warden from September 17, 1999, until January 27 or 28, 2001. *See* ***Martinez Report***, *Exhibit BB at 1*. It is also undisputed that Defendant Benavidez has worked for CCA since 1999, and that during the time at issue, in late 2000 to early 2001, he worked as a Lieutenant at TCDF. *See* ***Martinez Report***, *Exhibit CC at 1*.

Plaintiff's sole remaining claim is his claim that TCDF staff stole photographs of Plaintiff, depicting him with injuries, from his in-coming legal mail from his attorney, Charles Fisher, in violation of his federal constitutional rights. *See* **Complaint** (*Doc. 1*) *at 2* (*continuation sheet*). Although Plaintiff's **Complaint** (*Doc. 1*) fails to specify when the photos were allegedly taken and who took them, Plaintiff alleged in his prison grievance forms that the photos were taken from his legal mail on February 13, 2001, by Sergeant Jaramillo, Loretta Lopez, mail room clerk, and/or Corporal Lambert, none of whom are defendants in this case. *See* ***Martinez Report***, *Exhibit X*

(*Grievance Forms 01-02-72, 01-02-73, 01-02-128 and 01-02-129*).[6]  As relief, Plaintiff seeks monetary damages in the amount of $1,000,000.00.  *See* **Complaint** (*Doc. 1*) at 6; *Doc. 18 at 3*.

## Legal Standard

A motion for summary judgment may only be granted when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c).  In seeking a grant of summary judgment, the movant must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  This initial burden can be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Once the moving party has met this burden, the non-moving party may not rest on mere allegations or denials in his pleadings but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that

---

[6]Plaintiff's allegations in these grievance forms are somewhat inconsistent.  In Grievance Form 01-02-72, submitted by Plaintiff on February 13, 2001, he alleged that on February 13, 2001, Sergeant Jaramillo brought legal mail to his cell from Mr. Fisher, that the envelope was tampered with by Jaramillo, that two photos were missing, and that Jaramillo came back later and told Plaintiff that mail clerk Loretta Lopez took his photos and gave them to an investigator.  In Grievance Form 01-02-73, submitted by Plaintiff on February 13, 2001, he alleged that on February 13, 2001, Loretta Lopez opened his legal mail from Mr. Fisher and took two photos out and that Sergeant Jaramillo told him this.  In Grievance Form 01-02-128, submitted by Plaintiff on February 26, 2001, he alleged that he told a prison case worker that the legal mail delivered by Sergeant Jaramillo, presumably on February 13, 2001, was already open and that Sergeant Jaramillo took Plaintiff's photos.  In Grievance Form 01-02-129, submitted by Plaintiff on February 26, 2001, he alleged that "Corporal Lambt" [sic] told Plaintiff that he helped Sergeant Jaramillo lie about Plaintiff's mail not being open when he brought it to Plaintiff and that Plaintiff's "pictures is [sic] kept it [sic] a good place."  These grievances were investigated by TCDF and found to have no basis in fact. *See* **Martinez Report**, *Exhibit X* (*Grievance Forms 01-02-72, 01-02-73, 01-02-128 and 01-02-129*).

there is a genuine issue for trial." FED. R. CIV. P. 56(e). A "genuine issue" for trial is not simply "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160, 1164 (10th Cir. 2000) (party opposing motion must present sufficient evidence for a jury to return a verdict in that party's favor). In deciding a motion for summary judgment, the court must consider the record as a whole and draw all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *Munoz*, 221 F.3d at 1164.

## Analysis

The United States Supreme Court has recognized that prisoners have a protected constitutional interest in sending and receiving legal mail. *See Wolff v. McDonnell*, 418 U.S. 539, 575-577 (1974). However, prison officials may open and inspect a prisoner's incoming legal mail for contraband, as long as it is done in the prisoner's presence and the mail is not read by the prison inspector. *Id.* at 577; *see also Brown v. Williams*, No. 01-2199, 36 Fed. Appx. 361, at 363 (10th Cir. April 2, 2002) (unpublished). Thus, Plaintiff had a protected constitutional interest in receiving legal mail from his attorney, but officials at TCDF could open and inspect his in-coming legal mail for contraband if it was done in his presence and the mail was not read by the inspector.

To successfully assert a Section 1983 claim against Defendants Garner and Benavidez for interfering with his legal mail, Plaintiff must show that they had some personal involvement or participation in the incident in question, or that there is an affirmative link between their action or inaction and the misconduct of a person who they supervised. *See Grimsley v. MacKay*, 93 F.3d 676,

679 (10th Cir. 1996). The doctrine of *respondeat superior* is not applicable in a Section 1983 action, and Garner's and Benavidez' supervisory status, by itself, is not sufficient to establish liability. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1991).

The only portions of the record that implicate Defendants Garner and Benavidez in the alleged theft of photos from Plaintiff's legal mail on February 13, 2001, are several unsworn and unsupported allegations made by Plaintiff in his response to Defendants' motion for summary judgment. These allegations are: (1) Plaintiff's statement in his unsworn affidavit filed with the response that, "Defendants conspired with mail room and other staff to ensure that these photos would disappear if they ever came back to me;"[7] (2) Plaintiff's unsworn statement in his statement of undisputed material facts filed with the response that, "Defendant Garner was made aware that the photo was mailed to counsel and Plaintiff was informally advised that he instructed staff in the mail room to see to it that the photo never made it back into Plaintiff's possession;"[8] (3) Plaintiff's unsworn statement in the response that "he [presumably Sergeant Jaramillo] and mail room staffperson [sic], Loretta Lopez and Defendants conspired to deprive [Plaintiff] of evidence of the constitutional violations of Plaintiff;"[9] and (4) Plaintiff's unsworn statement in the response that "the records show that at least some [legal mail] was opened on orders of Defendants prior to it being shown to Plaintiff."[10] These

---

[7] *See **Affidavit of Charles Jackson** at 1*, attached to Plaintiff's ***Response in Opposition to Defendants' Motion for Summary Judgment*** (*Doc. 46*).

[8] See **Statement of Undisputed Material Facts** at 1, attached to Plaintiff's ***Response in Opposition to Defendants' Motion for Summary Judgment*** (*Doc. 46*).

[9] See **Response in Opposition to Defendants' Motion for Summary Judgment** (*Doc. 46*) at 4.

[10] See **Response in Opposition to Defendants' Motion for Summary Judgment** (*Doc. 46*)
(continued...)

allegations, without supporting factual evidence, are not sufficient to show that there is a genuine issue of fact for trial on Plaintiff's claim that Defendants interfered or tampered with Plaintiff's legal mail. *See Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994) (non-moving party must cite specific facts in support of his claim and may not rely on conclusory allegations to survive a motion for summary judgment). In addition to the foregoing statements, Plaintiff points to several documents attached to his response to Defendants' motion for summary judgment which he contends support his claim. However, these documents, which are unauthenticated and unsworn, fail to show that Defendants, or their subordinates, were involved in taking photos from Plaintiff's legal mail on February 13, 2001.[11]

---

(...continued)
at 4.

[11] The documents relied on by Plaintiff to support his claim are a portion of Exhibit B and Exhibits C, D and E to his ***Response in Opposition to Defendants' Motion for Summary Judgment*** (*Doc. 46*). The portion of Exhibit B to his response relied on by Plaintiff is a memo to Plaintiff from Joanna Harkin, dated December 15, 2000, confirming receipt of his "injury photo's[sic]" and enclosing "original injury photos, two (2) for safe-keeping." While this memo may tend to prove that Plaintiff at one time possessed photos depicting him with injuries, it is not evidence that photos were taken from his incoming legal mail almost two months later on February 13, 2001. Exhibit C to Plaintiff's response is a letter to Plaintiff from attorney Charles Fisher, dated February 16, 2001, stating that: Fisher received one photo of Plaintiff's injuries from another attorney; Fisher returned this photo to Plaintiff with other documents and a letter dated January 30, 2001; Plaintiff sent most of the documents back to Fisher, without the photo; and Fisher returned the re-sent documents, without the photo, to Plaintiff on February 12, 2001. Fisher states, in Exhibit C, that "the photo should be with my January 30, 2001 mailing to you, the one that you received securely." Exhibit D to Plaintiff's response is another letter to Plaintiff from Fisher, dated May 8, 2001, confirming that a single photo was included with Fisher's letter to Plaintiff dated January 30, 2001, and mailed on that date. These letters from Fisher to Plaintiff provide support for Plaintiff's allegation that Fisher mailed Plaintiff at least one photo of his injuries on or about January 30, 2001, but these letters do not establish that Defendants, or their subordinates, took photos from Plaintiff's incoming legal mail from Fisher on February 13, 2001. In fact, a reasonable inference could be drawn from the dates of Fisher's letters and his description of their contents, that the legal mail Plaintiff received from Fisher on February 13, 2001, was, in fact, Fisher's letter dated February 12, 2001 that did not contain a
(continued...)

Having reviewed the record, the Court concludes that summary judgment is appropriate with regard to Plaintiff's claim that photos were stolen from his legal mail from Mr. Fisher on February 13, 2001. There is no evidence in the record that Defendants Garner or Benavidez were personally involved in the opening or handling of Plaintiff's legal mail on that date, or that they supervised any of the TCDF employees who were allegedly involved in the opening or handling of Plaintiff's legal mail on that date. Moreover, even if these Defendants did supervise TCDF employees who were involved in opening or handling Plaintiff's legal mail on February 13, 2001, there is no evidence in the record that establishes an affirmative link between the action or inaction of these Defendants and the alleged misconduct of any employee who they may have supervised. In fact, with regard to Defendant Garner, it is uncontroverted that he was no longer working at TCDF on February 13, 2001, having left his position at TCDF on January 27 or 28, 2001, to work at another CCA facility in Oklahoma. *See **Martinez Report**, Ex. BB at 1*. Thus, Plaintiff has failed to show that Defendants Garner and Benavidez had any involvement in, or connection with, the alleged interference with Plaintiff's legal mail. Because Plaintiff's claim against Defendants Garner and Benavidez for interference with his legal mail is factually unsupported, there is no genuine issue of material fact with regard to this claim and Defendants are entitled to summary judgment on this claim as a matter of

---

(...continued)
photo. Finally, Exhibit E to Plaintiff's response is a CCA/TCDF form signed by Plaintiff and Alfredo Jaramillo on February 7, 2001, stating that a letter "classified as privileged, out-going correspondence" from Plaintiff to Charles Fisher was opened on that date by mailroom clerk Loretta Lopez, "in [the] presence of Internal Affairs," because "[t]here was reasonable suspicion as to its legality" due to the fact that it "felt as if it had cloth or other item other than paper." The opening of this outgoing letter to Mr. Fisher, mailed seven days before the date of the incident in question, appears to have no connection to the incoming letter from Mr. Fisher that is at issue in Plaintiff's claim. Nothing in Exhibit E indicates that the outgoing letter to Mr. Fisher contained photographs, or that it was opened outside Plaintiff's presence on orders to interfere with his mail or as the result of some conspiracy to interfere with his mail.

9

law. "A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts." *Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000).

## Leave to Amend Complaint

In his response to Defendants' motion for summary judgment, Plaintiff asks the Court for leave to amend his complaint to add Sergeant Jaramillo as a defendant, and to "correct other errors and inadequacies" and "strengthen his allegations." *See **Response in Opposition to Defendants' Motion for Summary Judgment*** (*Doc. 46*) at 1, 3-4.[12] Plaintiff does not indicate how his allegations could be corrected or strengthened if he were given permission to amend his complaint, or how his claim against Sergeant Jaramillo could withstand summary judgment.[13] This case has been pending since 2003, and Plaintiff has already amended his complaint once with leave of court. *See **Proposed Findings and Recommended Disposition & Orders, Including Order to File a Martinez Report*** (*Doc. 25*) at 4. Plaintiff's claim for interference with his legal mail has been thoroughly briefed and is the subject of an extensive *Martinez* Report prepared by Defendants. Based on a review of the

---

[12]Plaintiff's request to amend his complaint does not comply with the requirement of D.N.M.LR-Civ. 15.1 that a proposed amendment to a pleading must accompany a motion to amend.

[13]In support of their motion for summary judgment, Defendants point to the sworn affidavit of Sergeant Jaramillo included in the ***Martinez Report*** in which Jaramillo states that: he was a disciplinary hearing and grievance officer at TCDF during the time at issue in Plaintiff's complaint and at times was called upon to distribute inmates' mail; he recalls taking a legal mail parcel to Plaintiff's cell on or about February 13, 2001; he opened the parcel and checked it for contraband such as drugs and pornography in front of Plaintiff's food port so that Plaintiff could see the parcel being opened; he found no contraband and passed Plaintiff the parcel; he did not remove any photos from the parcel; and he does not recall seeing any photos inside the parcel. *See **Martinez Report** (Doc. 30), Exhibit DD at 1*. Plaintiff does not dispute that Sergeant Jaramillo delivered the legal mail package to him on February 13, 2001, but contends, through his unsworn and unsupported allegations, that the package was already tampered with and the photos removed, and that Jaramillo was somehow involved in this. *See Plaintiff's **Response in Opposition to Defendants' Motion for Summary Judgment** (Doc. 46) at 4; **Martinez Report**, Exhibit X (Grievance Forms 01-02-72 , 01-02-128 and 01-02-129)*.

10

record and Plaintiff's allegations, the Court concludes that it would be futile to allow Plaintiff to amend his complaint a second time, at this late stage in the proceedings, to add Sergeant Jaramillo as a defendant and modify his claim regarding interference with his legal mail. There is no evidence in the record that implicates Sergeant Jaramillo in the alleged taking of Plaintiff's photos on February 13, 2001, and Plaintiff has failed to show that by amending his complaint his claim can be made to survive summary judgment.[14] Accordingly, to the extent that Plaintiff's response to Defendants' motion for summary judgment seeks leave to amend his complaint a second time, this request should be denied. *See Curley v. Perry*, 246 F.3d 1278, 1281-1282 (10th Cir. 2001) (denial of leave to amend *pro se* complaint proper where it is obvious that plaintiff cannot prevail on the facts and it would be futile to give him opportunity to amend).

## Motion to Reinstate

On July 12, 2005, Plaintiff filed his *Plaintiff's Motion to Reinstate Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His Two (2) Remaaining [sic], Exhausted Claim's [sic]* (*Doc. 62*). On July 25, 2005, Defendants filed their *Defendants' Response to Plaintiff's Motion Filed on July 12, 2005* (*Doc. 63*). Plaintiff did not file a reply to the response. In effect, Plaintiff's motion asks the Court to reconsider its *Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice, and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim (Doc. 60)* (*Doc. 61*), filed on June 30, 2005, and reinstate his

---

[14]In his response in opposition to Plaintiff's motion for summary judgment, Plaintiff suggests that he could bolster his claims if he were allowed to conduct discovery in this case. *See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* (*Doc. 46*) *at 1,4*. However, discovery has not been authorized in this case by the Court and Plaintiff has failed to demonstrate how discovery might lead to evidence in support of his claim.

unexhausted claim that Defendant Benavidez assaulted him and denied him medical treatment on January 15, 2001.[15]

A motion for reconsideration is neither a Rule 59(e) motion to alter or amend a judgment nor a Rule 60(b) motion for relief from judgment because the Court has not yet entered a Rule 54 judgment.  Plaintiff's motion was filed twelve days after entry of the Court's ***Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice, and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim (Doc. 60)*** (*Doc. 61*), which contains interlocutory rulings.[16]  While the Federal Rules of Civil Procedure do not provide for motions to reconsider, this Court has previously determined that it may use its plenary power to reconsider interlocutory orders and revise them "if justice so requires." *Joseph G. Ambrose v. Thomas E. White, et al.*, Civ. No. 01-1263 JP/KBM, slip. op. at 3 (D. N.M. Jan. 28, 2001).[17]  In deciding motions to reconsider interlocutory orders, Courts frequently

---

[15]On May 23, 2005, the presiding judge in this case ruled that Plaintiff failed to exhaust available prison administrative remedies with respect to his claim that Defendant Benavidez assaulted him and denied him medical treatment on January 15, 2001, as well as certain other claims.  *See **Memorandum Opinion and Order Adopting in Part and Rejecting in Part Magistrate Judge's Proposed Findings and Recommended Disposition** (Doc. 59)*.  Pursuant to the provisions of that ruling, Plaintiff filed a motion (*Doc. 60*) on June 7, 2005, asking the Court to dismiss all of his unexhausted claims and proceed to consider the merits of his remaining, exhausted claim that TCDF staff stole photographs from his incoming legal mail.  The presiding judge granted Plaintiff's motion in her ***Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice, and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim (Doc. 60)*** (*Doc. 61*), filed on June 30, 2005.

[16]Plaintiff's request to reinstate his claim against Defendant Benavidez is a reversal of his position in his motion (*Doc. 60*), filed on June 7, 2005, in which he asked the Court to dismiss, without prejudice, all of his unexhausted claims in this case, which included his claim that Defendant Benavidez assaulted him and denied him medical treatment on January 15, 2001.

[17]*See also Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) (within district
(continued...)

refer to the standards used in deciding Rule 59(e) motions and reconsider interlocutory decisions if a party presents newly-discovered evidence or if the decision is clearly erroneous.

In this instance, the Court has reviewed Plaintiff's motion, and the documents in the record which it refers to, and finds that the motion has no merit.  The motion does not present newly-discovered evidence and it fails to demonstrate that the subject order entered by the presiding judge in this case was clearly erroneous.  The motion raises no new issues and it fails to demonstrate any grounds for reconsidering the presiding judge's underlying ruling that Plaintiff failed to exhaust available prison administrative remedies with respect to his claim that Defendant Benavidez assaulted him and denied him medical treatment.  Accordingly, justice does not require that the ***Order Granting Plaintiff's Motion to Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice, and to Have the Court Proceed to Consider His Merits on His One Remaining, Exhausted Claim (Doc. 60)*** (*Doc. 61*) be modified.  Because Plaintiff's motion is without merit, it should be **DENIED**.

### Conclusion

There are no genuine issues of material fact with respect to Plaintiff's claim that Defendants Garner and Benavidez interfered with Plaintiff's legal mail and Defendants are entitled to summary judgment on this claim as a matter of law.  Accordingly, under Fed. R. Civ. P. 56(c), Defendants' motion for summary judgment should be granted with respect to this claim and this case should be dismissed with prejudice.  To the extent that Plaintiff's response to Defendants' motion for summary judgment seeks leave to amend his complaint a second time, that request should be denied because it would be futile to allow Plaintiff to amend the complaint.  Finally, because it lacks merit, ***Plaintiff's***

---

(...continued)
judge's discretion to revise interlocutory orders prior to entry of final judgment).

*Motion to Reinstate Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His Two (2) Remaaining [sic], Exhausted Claim's [sic]* (*Doc. 62*) should be denied.

### RECOMMENDED DISPOSITION

The Court recommends that Defendants' *Motion for Summary Judgment* (*Doc. 34*) be **GRANTED** with respect to Plaintiff's sole remaining claim that his legal mail was interfered with, and that this case be **DISMISSED WITH PREJUDICE.** Additionally, it is recommended that Plaintiff's request for leave to amend his complaint, contained in his *Response in Opposition to Defendants' Motion for Summary Judgment* (*Doc. 46*), be **DENIED**, and that *Plaintiff's Motion to Reinstate Voluntarily Dismiss All of His Unexhausted Claims, Without Prejudice and to Have the Court Proceed to Consider His Merits on His Two (2) Remaaining [sic], Exhausted Claim's [sic]* (*Doc. 62*) be **DENIED**.


_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**